In re Joey L. BENTLEY and
Letha M. Bentley.

INTERNAL REVENUE SERVICE

v.

Joey and Letha BENTLEY.

No. 3:94–CV–446.
Bankruptcy No. 93–30510.

United States District Court,
E.D. Tennessee,
at Greeneville.

Oct. 5, 1994.

Shannon L. Hough, U.S. Dept. of Justice, Tax Div., Washington, DC, for appellant I.R.S.

Brenda Gail Brooks, Neal S. Melnick, Melnick & Moore, Donna W. Temple, Chief Dep-

uty Clerk, U.S. Bankruptcy Court, Knoxville, TN, for Joey L. Bentley.

Brenda Gail Brooks, Neal S. Melnick, Melnick & Moore, Knoxville, TN, for Letha M. Bentley.

### ORDER

HULL, District Judge.

The Internal Revenue Service (IRS) appeals from an Order of United States Bankruptcy Judge Richard Stair, Jr. of the United States Bankruptcy Court for the Eastern District of Tennessee, which granted summary judgment to debtors Joey L. Bentley and wife Letha Bentley with regard to their objection to part of an IRS claim. For the reasons which follow, we **AFFIRM.**

### I. BACKGROUND.

The Bentleys operated a trucking company which leased its four tractors to another trucking company and also supplied drivers. During the applicable tax years, 1989, 1990 and 1991, the Bentleys hired independent contractors to drive the tractors and did not withhold amounts from the drivers' wages for sums due under the Federal Insurance Contributions Act (FICA). They also did not pay any sums to the IRS under the Federal Unemployment Tax Act (FUTA).

The Bentleys filed this bankruptcy case under Chapter 7, on February 3, 1993. On July 9, 1993, the case was converted to a Chapter 13. The Bentleys' Plan was confirmed on October 6, 1993. The IRS filed a proof of claim on August 6, 1993, in the amount of $19,650.67. Part of this claim was based upon a determination that the debtors should have treated their drivers as employees rather than independent contractors. The IRS recalculated the debtor's tax liability and charged $16,687.67 for FICA and FUTA taxes, including a penalty of $331.47 and interest of $3,143.95, for 1989, 1990, and 1991. The IRS also sought some back income tax for tax year 1992, which is not in dispute.

On September 15, 1993, the debtors filed an objection to that portion of the IRS claim which alleged nonpayment of FICA and FUTA taxes. In a motion for summary judgment, they sought a ruling on the independent contractor issue, relying on the "safe haven" provisions afforded them under § 530(a) of the Revenue Act of 1978. This section provides, in pertinent part,

Controversies Involving Whether Individuals are Employees for Purposes of Employment Taxes

(a) Termination of certain employment tax liability—

(1) In General. If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal Tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

The Bankruptcy Court translated this language into a three-part test which must be satisfied in order to successfully invoke the safe harbor provisions. First a taxpayer must not have treated an individual as an employee for any period. Second, all relevant federal tax returns, including information returns, regarding the individual, must have been filed on a basis consistent with the individual's having been an independent contractor rather than an employee. And, third, the taxpayer must have had a reasonable basis for treating the individual as an independent contractor rather than an employee.

The Bankruptcy Court found that the Bentleys satisfied these requirements for tax years 1990 and 1991, but not for 1989, because they could not determine from their records whether Forms 1099 (information returns) were issued to their drivers in that year. In ruling that the Bentleys had a "reasonable basis" for treating their drivers as independent contractors, the Bankruptcy Court found that the Bentleys followed a

"long-standing recognized practice of a significant segment of the [trucking] industry" as permitted under Section 530(a)(2)(c) of the Revenue Act of 1978. It is this latter finding which is at the heart of the IRS appeal.

The IRS contends that the Bankruptcy Court erred in holding that the debtors had reasonably relied on the practice of a "significant segment of the industry" and had also erred in denying its request for additional time in which to take discovery on the practice in the trucking industry. It argues that the plaintiffs' proof was insufficient, as a matter of law, to establish a "long-standing recognized practice of a significant segment" of the trucking industry and that, after additional time for discovery, this issue should have gone to trial.

## II. THE PRACTICE IN THE TRUCKING INDUSTRY.

The Bentleys' proof on this determinative issue consisted of two affidavits. One was from Letha Bentley to the effect that she herself is a licensed truck driver and familiar with the trucking industry. She claims that, in treating their drivers as independent contracts, she and her husband were following the same practices they had seen other owner-operators employ over the years. The other affidavit was from Margaret Kerr, the owner of Crossroads Bookkeeping Service, and a woman with approximately 30 years experience in the bookkeeping business. She claims that, because her husband is a self-employed tractor-trailer owner-operator, she has gradually acquired a number of clients involved in the trucking business. She estimates that about 25% of her regular clientele are owners, owner-operators or independent truckers. She testifies that "a significant number of independent truck drivers who do not own their own tractors are hired by the tractor owners on an independent contractor basis." She offers the opinion that the hiring of drivers as independent contractors is a long-standing, commonly recognized practice in a significant segment of the trucking industry in this region.

The IRS offered the affidavit of Michael Burke, who has owned his own trucking company in the Knoxville, Tennessee area for over ten years. Mr. Burke, like the Bentleys, furnishes trucks and drivers to a leasing corporation for the purpose of pulling the leasing corporation's truck trailers. He claims that since 1983, he has treated his tractor drivers as employees. He claims that, during the ten-year period that he has owned his trucking company, he has known other owners who have treated their drivers as employees, and he has also known other owners who have treated their drivers as independent contractors. It was his impression that the "current trend" in the industry is to treat drivers as employees.

Judge Stair rejected the IRS argument that a "significant segment of the industry" must mean a majority of the industry and also found that Mr. Burke's affidavit failed to effectively counter the affidavits advanced by the debtors. In fact, it showed that both methods are used in the industry.

## III. THE DISCOVERY ISSUE.

The Bentleys objected to the IRS claim for FICA and FUTA taxes in September of 1993. They filed their motion for summary judgment on the issue on October 19, 1993. In the IRS response, filed on November 15, 1993, the IRS requested additional time to conduct discovery. It made no discovery requests before the hearing held on December 13, 1993. At the hearing, its attorney advised the Bankruptcy Court that she wished to depose Mrs. Bentley to determine whether she actually relied upon the industry standard. She also indicated that she wished to depose representatives of the trucking company that the Bentleys leased their tractors to in order to determine whether drivers were treated as independent contractors by a significant segment of the industry.

Judge Stair found that such discovery would serve no purpose. He also concluded that the IRS had had ample time to discover industry practice and could easily have obtained additional affidavits. Judge Stair declined to extend the time for discovery on that issue.

## IV. DISCUSSION.

In the Court's opinion, Judge Stair acted within his discretion to deny further

time for discovery on this issue. He already had before him evidence from all parties suggesting that both practices are common in the industry. The IRS contends that the evidence is simply insufficient as a matter of law. From the cases advanced by the IRS, it is clear to the Court that a party wishing to rely upon the safe haven provisions must offer more than his own, self-serving testimony about industry practice. And, if Margaret Kerr is the debtor's own bookkeeper, as suggested by the IRS, then her corroboration may also be insufficient to establish a long-standing practice of significant segment of the industry. However, when the debtors' proof is coupled with the testimony of Mr. Burke, a regional competitor unconnected to the debtors, only one reasonable conclusion was possible. In other words, construing all the facts in a light most favorable to the IRS, the Bankruptcy Court was entitled to find that a significant segment of the regional trucking industry treated its drivers as independent contractors. No material factual dispute made summary judgment inappropriate in this instance.

Accordingly, the Bankruptcy Court is hereby **AFFIRMED.**